## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ROBERT LEE MORGAN,

> *Plaintiff*,

> v.

EQUIFAX INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.;
TRANS UNION, LLC; LEXISNEXIS RISK
SOLUTIONS, INC.; and WELLS FARGO BANK,
N.A.,

> *Defendants*.

No. 3:23cv518(MPS)

## RULING ON MOTIONS TO DISMISS

Robert Lee Morgan brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* alleging that consumer reporting agencies Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, and LexisNexis Risk Solutions, Inc. violated the FCRA as to their reporting of his auto loan.  Specifically, he claims that they failed to follow reasonable procedures to assure the maximum possible accuracy of his credit report in violation of § 1681e(b), and failed to conduct a reasonable reinvestigation to determine whether information he disputed was inaccurate in violation of § 1681i.  ECF No. 42 ¶ 12, counts 1 and 2.  He also alleges that Wells Fargo Bank, N.A., which furnished the credit information to the consumer reporting agencies, failed to conduct a reasonable reinvestigation of the disputed information in violation of § 1681s-2(b) of the FCRA.  *Id.* ¶ 13, count 3.  Equifax, Trans Union, and LexisNexis (the "CRA Defendants")[1] and Wells Fargo move to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that Morgan fails to allege a

---

[1] Experian initially moved to dismiss but subsequently withdrew its motion, ECF No. 95, and instead filed a motion to compel arbitration.  ECF No. 94.

cognizable inaccuracy under the FCRA.[2]  ECF Nos. 46 (Equifax); 48 (Trans Union), 75 (Wells Fargo), and 77 (LexisNexis).  For the reasons that follow, the motions are DENIED.

## I.   FACTUAL BACKGROUND

The following facts, which I accept as true for purposes of this ruling, are drawn from the Amended Complaint and certain exhibits submitted by the parties.[3]

*The Parties*

Morgan is a consumer as defined by the FCRA.  ECF No. 42 ¶ 15.  Equifax, Experian, Trans Union, and LexisNexis are consumer reporting agencies as defined in 15 U.S.C. § 1681a(f), and are "regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports … to third parties."[4]  *Id.* ¶¶ 17, 19, 21, 23.

Wells Fargo is a "furnisher" of information to consumer reporting agencies under 15 U.S.C. § 1681s-2 and "is regularly engaged in the business of furnishing credit information to consumer reporting agencies, including each of CRA Defendants."  *Id.* ¶ 25.

*Auto Loan*

In February 2016, Morgan purchased a Nissan Altima from Steven Tolin Enterprises

---

[2] Morgan requests oral argument in his opposition memoranda.  In light of the extensive briefing before the Court, I do not believe that oral argument would be particularly helpful in deciding the motions, all of which are premised on one principal argument.

[3] In addition to the operative complaint, I consider the following materials submitted by the parties (including Morgan) because Morgan discusses their contents in the Amended Complaint, they are integral to the complaint, and there is no dispute as to their authenticity:  Wells Fargo's July 25, 2016 letter to Morgan, ECF No. 49 at 28; ECF No. 75-1 at 22; the settlement agreement between Morgan and the nonparty car dealership, New England Auto, dated July 8, 2016, ECF No. 46-1 at 4-6; ECF No. 49 at 25-27, ECF No. 83-1 at 4-7; Morgan's November 18, 2022 letter to Equifax, ECF No. 46-1 at 2; Morgan's November 18, 2022 letter to Experian, ECF No. 70-1 at 2; and Morgan's February 17, 2023 letter to LexisNexis, ECF No. 84-1 at 2.

For reasons set forth below, I do not consider the confidential settlement agreement Wells Fargo submitted with its motion, ECF No. 75-1 at 31-34.

[4] Although LexisNexis contests this allegation in its motion, see ECF No. 77-1 at 6, I take the allegation in the complaint as true for the purpose of these motions.

LLC d/b/a New England Auto World ("New England Auto").[5]  *Id.* ¶¶ 54, 58.  Morgan financed the purchase through defendant Wells Fargo.  *Id.* ¶ 55.  Within a short period of time, Morgan discovered that the vehicle had "incurred undisclosed frame damage prior to his purchase of [it], and which damage caused the vehicle to be unsafe and not in merchantable condition."  *Id.* ¶ 56. An independent auto body expert determined that the vehicle "had been in a prior accident or similar event that caused damage that had not been properly repaired, and that the vehicle was not in merchantable condition."  *Id.* ¶ 58.  The expert further determined that the vehicle was unsafe to drive.  *Id.*

*Morgan's June 1, 2016 Letter to Wells Fargo*

Morgan "notified Wells Fargo, via letter dated June 1, 2016, that [he] revoked his acceptance of the vehicle pursuant to Conn. Gen. Stat. § 42a-2-608[[6]] because it was not in merchantable condition at the time of sale."  *Id.* ¶ 59.  In the letter to Wells Fargo, Morgan "disputed any further indebtedness under the vehicle purchase contract and [stated that he] would no longer be making any payments."  *Id.* ¶ 60.  He also requested that Wells Fargo retrieve the vehicle from his residence because the vehicle was unsafe to drive.  *Id.* ¶ 61.

*Morgan's Settlement Agreement with New England Auto*

Morgan entered into an agreement with New England Auto.  *Id.* ¶ 63.  The agreement

---

[5] New England Auto is not party to this lawsuit.

[6] Conn. Gen. Stat. § 42a-2-608 provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

was signed by Morgan on July 22, 2016[7] and states that it is dated July 8, 2016.  *Id.*  It states in

pertinent part:

SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement (the "Agreement") is dated July 8, 2016 regardless of the actual date of execution by the parties. The Agreement is made by and between ROBERT LEE MORGAN ("Morgan"), now or formerly of Derby, Connecticut, and STEVEN TOLIN ENTERPRISES LLC d/b/a NEW ENGLAND AUTO WORLD ("New England Auto World") (hereinafter collectively referred to as the "Parties").

WHEREAS, Morgan purchased a certain 2013 Nissan Altima (the "Vehicle") from New England Auto World pursuant to a retail installment contract dated February 9, 2016 (the "Contract") that was subsequently assigned to Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services ("Wells Fargo");

WHEREAS, Morgan notified New England Auto World and Wells Fargo of his revocation of acceptance of the Vehicle on June 1, 2016, and the Vehicle has been retrieved by New England Auto World;

WHEREAS, each Party hereto denies that they or it have violated any law or regulation or breached any contract and denies committing any wrongdoing to the detriment of anyone, and each Party believes that they or it have no liability to the other; and

WHEREAS, through the execution of this Agreement, the Parties desire to resolve their differences, settle the Lawsuit, and release one another from any and all claims that are the subject of this Agreement.

NOW THEREFORE, in consideration of the mutual covenants and other good and valuable consideration set forth herein below, the Parties, intending to be legally bound, do hereby agree as follows:

1. Return of Vehicle and Payment of Contract Balance. In consideration for the Agreement, New England Auto World shall pay to Wells Fargo the balance claimed by it under the Contract within seven (7) calendar days of the date of this Agreement. New England Auto World hereby acknowledges that it has retrieved the Vehicle from Morgan. Morgan will execute all documents reasonably requested by New England Auto World in order to enable the payment to Wells Fargo and to effectuate the transfer of title of the Vehicle to New England Auto World.

---

[7] The complaint alleges that Morgan signed the agreement July 22, 2022.  ECF No. 42 ¶ 63. This appears to be a scrivener's error because the agreement, which Morgan provided with his opposition, reflects a July 22, 2016 date under his signature.  ECF No. 83-1 at 6.

2. <u>Settlement Proceeds</u>. In further consideration of the Agreement, New England Auto World shall pay to Morgan the sum of Two Thousand Five Hundred Dollars ($2,500.00) (the "Settlement Proceeds"). The Settlement Proceeds shall be made payable to "Consumer Law Group, LLC, Trustee".

3. <u>Treatment of Settlement</u>. The Parties agree and acknowledge that the settlement of this matter is in the nature of a compromise of disputed, unliquidated and contingent debts and claims.

4. <u>Release of Claims</u>. Morgan hereby releases New England Auto World and its past, present, and future agents, representatives, shareholders, principals, attorneys, insurers, affiliates, parent corporations, subsidiaries, officers, directors, employees, predecessors and successors and heirs, executors and assigns, from any and all legal, equitable or other claims, counterclaims, demands, setoffs, defenses, contracts, accounts, suits, debts, agreements, actions, causes of action, sums of money, reckoning, bonds, bills, covenants, promises, damages, controversies, disputes, and any past, present or future duties, responsibilities, or obligations, from the beginning of the world to the date hereof, which are known or unknown which arise out of or relate to, in any manner or form, the Contract or the Vehicle.

Wells Fargo, as the assignee of the Contract, is intended to be included within the scope of the release. However, this release does not extend to any future claims that Morgan may have against Wells Fargo arising from its failure to comply with the Fair Credit Reporting Act that may arise after the date of this Agreement[.]

This Agreement shall not waive rights or claims that may arise after the date of execution of this Agreement, including any action to enforce this Agreement.

\* \* \*

8. <u>Voluntary Agreement</u>. The Parties represent and declare that they have carefully read this Agreement, that each knows the contents hereof, and that each signs the same freely and voluntarily.

ECF No. 83-1 at 4. The agreement was not signed by New England Auto. *Id.* at 6. On or before

July 8, 2016, New England Auto retrieved the vehicle. ECF No. 42 ¶ 62.

*Wells Fargo's July 25, 2016 Letter*

In a letter date July 25, 2016, Wells Fargo notified Morgan that the Wells Fargo loan

related to the Nissan Altima "was paid in full or was satisfied on 07/22/2016" and that the title

would be sent to New England Auto World.  ECF No. 75-1 at 22.

*Late Notations on Morgan's credit reports*

Beginning in 2017, Morgan noticed that the CRA Defendants were reporting late notations in consumer reports in relation to the Wells Fargo tradeline concerning the Nissan Altima installment loan (the "Wells Fargo Tradeline").  ECF No. 42 ¶ 65. In particular, Morgan noticed that the CRA Defendants were indicating in the Wells Fargo Tradeline that he "had been delinquent in failing to make timely payments for the months of June and July of 2016 (the 'Late Notations')."  *Id.* ¶ 66.  Morgan's Trans Union report dated July 4, 2022, indicated as to the Wells Fargo Tradeline a "Pay Status" field of ">Paid, Closed; was 60 days past due date<."  *Id.* ¶ 95. Morgan's Equifax report dated August 2, 2022, indicated as to the Wells Fargo Tradeline an "'Account Status' field of 'NOT_MORE_THAN_THREE_PAYMENT_PAST_DUE.'"  *Id.* ¶ 96. Morgan's Experian report dated September 19, 2022, indicated for "the Wells Fargo Tradeline a 'Status' field of 'Paid, was past due 60 days.' Further, the payment history grid indicated '30' and '60' for the months of June and July of 2016, respectively."  *Id.* ¶ 97.  Defendant Wells Fargo furnished the inaccurate information relating to Morgan to the national credit bureaus, including Experian, Equifax, and Trans Union.  *Id.* ¶ 180.

The Late Notations caused each of CRA Defendants' credit scores for Morgan to be artificially and inaccurately reduced.  *Id.* ¶ 67.  Morgan was unable to secure an auto loan at an affordable rate and denied credit cards due to the CRA Defendants' inclusion of the Late Notations on his consumer report.  *Id.* ¶¶ 74, 75, 76, 88.

*Morgan Alleges Late Notations were Inaccurate*

"The Late Notations were inaccurate because [Morgan] had correctly revoked the vehicle purchase and related loan debt on June 1, 2016."  *Id.* ¶ 98.  "[T]he revocation operated

retroactively to completely rescind the purchase of the unmerchantable vehicle from at the time of the purchase." *Id.* ¶ 99.   Furthermore, any debt owed regarding the vehicle had been transferred to the car dealer, New England Auto.  *Id.* ¶ 100.

It was materially misleading for the Defendants to furnish or publish that Morgan was delinquent and past due on auto loan payments for the months of June and July 2016, because Morgan "no longer had possession of the vehicle at issue during those months, and no longer had use or enjoyment of the vehicle at issue." *Id.* ¶ 101.   In addition, "[i]t was … materially misleading … to furnish or publish that [Morgan] was delinquent and past due on auto loan payments for the months of June and July of 2016, during which months [he] was not delinquent and financially irresponsible, but, rather, was standing on his statutory rights and was intentionally refusing to make such payments that he, in fact, did not owe." *Id.* ¶ 102.

*Morgan Alleges June and July Payments Were Not 30 Days Late*

Morgan's monthly payments for the auto loan underlying the Wells Fargo Tradeline were due on the 9th of each month.  *Id.* ¶ 103.  Morgan ceased to make payments beginning on June 1, 2016, the date of his attorney's letter to Wells Fargo.  *Id.* ¶ 104.  Morgan "was never 30 days late" for the monthly payment that was due on June 9, 2016 or July 9, 2016 because "the outstanding Wells Fargo auto loan balance had been transferred to New England [Auto] as of July 8, 2016, by means of a written and binding agreement which rendered [Morgan] no longer financially responsible for any of the remaining auto loan balance and payments."  *Id.* ¶¶ 105, 106.

"Furthermore, factually, Morgan was never 30 days late for the monthly payment that was due on July 9, 2016" because, as acknowledged by Wells Fargo's July 25, 2016 letter, the auto loan 'was paid in full or was satisfied on 07/22/2016.'"  *Id.* ¶ 107.

*Morgan's November 2022 Dispute Letters to Equifax, Experian, and Trans Union*

On November 18, 2022, Morgan mailed a detailed dispute letter to Equifax, Experian, and Trans Union (the "November Dispute letter"). *Id.* ¶ 110. The November Dispute letter "clearly indicated how and why the relevant Wells Fargo Tradeline was inaccurate[]" and "the circumstances surrounding Plaintiff's return of the vehicle and revocation of the contract." *Id.* ¶ 111. The letter "specifically disputed as inaccurate the Late Notations – for June and July 2016 – that [were] appearing in the Wells Fargo Tradeline." *Id.* ¶ 112. Morgan enclosed with the November dispute letter a copy of (1) Wells Fargo's July 25, 2016 letter and (2) the settlement agreement with New England Auto. *Id.* ¶ 113. Morgan's letter to Equifax stated:

> I am writing this letter to dispute errors on my credit report. The information contained in my credit report is inaccurate. As a result, I am disputing the following account and asking to correct this inaccurate information from my credit report:
>
> Account name: WELLS FARGO DLR SVC/WACH DLS;
> Account number: redacted;
> Balance: $0;
> Date Opened: Feb 6, 2016;
> Late payments: June 2016, July 2016.
>
> In February 2016 I purchased a car from New England Auto World through Wells Fargo. A technical inspection determined that the frame of the car was damaged. On June 1, 2016, I revoked the agreement and the vehicle has been retrieved by New England Auto World.
>
> After the litigation process, the court decided that I should not be responsible for paying the account and New England Auto World shall pay the balance to Wells Fargo (settlement agreement – doc 1).
>
> On July 25, 2016, I received a letter from Wells Fargo stating that the account was paid in full.
>
> For some reason, the account is being reported with two late payments in June and July 2016, which is inaccurate, the agreement was revoked and I won the case against the dealership, thus I'm requesting Equifax to remove these late marks from my report.

ECF No. 46-1 at 2.  Morgan sent an identical letter to Experian.  ECF No. 70-1 at 2.

*Subsequent Events*

In or around January 2023, Morgan discovered that Equifax, Experian, and Trans Union were still reporting the Late Notations.  ECF No. 42 ¶ 114.

Regarding the Wells Fargo Tradeline, Morgan's Experian report dated January 3, 2023, indicated a "Status" field of "Paid, was past due 60 days." *Id.* ¶ 117.  In addition, the payment history grid indicated "30" and "60" for the months of June and July of 2016, respectively.  *Id.* Morgan's Trans Union report, dated January 11, 2023, indicated a "Pay Status" field of ">Paid, Closed; was 60 days past due date<." *Id.* ¶ 115.  Morgan's Equifax report dated January 3, 2023, indicated a status of "NOT_MORE_THAN_THREE_PAYMENT_PAST_DUE." *Id.* ¶ 116.

*LexisNexis*

Morgan noticed that LexisNexis was including the Late Notations in its consumer reports to third parties.  *Id.* ¶ 118.  Morgan's November 11, 2022 LexisNexis consumer disclosure report indicated a late payment of "30-60" days for the month of June 2016.  *Id.* ¶¶ 119-20.  In addition, the LexisNexis consumer file reflected a late payment of 60-days indicated in the "TIMES LATE" field (together, the "LexisNexis Late Notation").  *Id.* ¶ 120.  The LexisNexis Late Notation appeared three times in Morgan's LexisNexis consumer disclosure report, once in relation to Experian's reporting, once in relation to Trans Union's reporting, and once in relation to Equifax's reporting. *Id.* ¶ 121.  LexisNexis sold consumer reports regarding Morgan, which contained the inaccurate LexisNexis Late Notation, to various third-party credit or insurance evaluators.  *Id.* ¶ 122.

*Morgan's February 2023 Dispute Letter to LexisNexis*

On February 17, 2023, Morgan sent a dispute letter to LexisNexis (the "LexisNexis

Dispute") disputing as inaccurate the LexisNexis Late Notation appearing in the Wells Fargo Tradeline. *Id.* ¶¶ 127-129. Morgan's letter to LexisNexis stated in pertinent part:

> I am writing this letter to dispute errors on my Lexis Nexis report. The information contained in my report is inaccurate. As a result, I am disputing the following information:
>
> <u>Credit File</u>
> Account name: WFDS/WDS;
> Account number: [redacted]
> Balance: $0
> Date Opened: Feb 6, 2016.
>
> The above-mentioned account is being reported as 30 and 60 days late, which is inaccurate. In February 2016 I purchased a car from New England Auto World. I financed the car through Wells Fargo. I made timely payments on my Wells Fargo auto loan every month. In May 2016, I learned that the frame of the car was damaged. That damage was never disclosed to me by the dealership. On June 1, 2016, I revoked the purchase agreement and returned the vehicle to New England Auto World. I was not responsible for making any payments after I returned the car. I sued New England Auto World. We settled the case, and as part of the settlement, New England Auto World was responsible for paying off the rest of the auto loan with Wells Fargo. New England Auto World paid off the Wells Fargo auto loan on July 22, 2016. I was not responsible for making any payments on the Wells Fargo loan after I revoked the contract and returned the car on June 1, 2016. I can't be late on an account I wasn't required to pay.

ECF No. 84-1 at 2. Morgan enclosed a copy of the settlement agreement with New England Auto. ECF No. 42 ¶ 130.

Thereafter, Morgan received a letter from LexisNexis, dated March 22, 2023, with a subject line "Results of Reseller Dispute," with a copy of the reinvestigation results letter from Equifax in relation to his LexisNexis Dispute. *Id.* ¶ 131. The reinvestigation results letter from Equifax failed to remove the inaccurate LexisNexis Late Notation and continued to indicate that the Wells Fargo account "was 30 – 59 Days Past Due." *Id.* ¶ 132.

Morgan also received a letter from LexisNexis dated March 22, 2023 with a subject line "Results of Reseller Dispute," with a copy of a reinvestigation results letter from Experian in relation

to his LexisNexis Dispute.  *Id.* ¶ 133.  The reinvestigation results letter from Experian contained some of Morgan's credit tradelines but omitted the Wells Fargo auto loan tradeline.  *Id.* ¶ 134.

In May 2023, Morgan reviewed a copy of his LexisNexis consumer disclosure report dated May 1, 2023, which continued to indicate the LexisNexis Late Notation.  *Id.* ¶¶ 135-136.

*Wells Fargo*

In December 2022, Wells Fargo received a copy of Morgan's November Dispute letter from Equifax, Experian, and Trans Union.  *Id.* ¶ 147.  Wells Fargo failed to communicate back to each of the CRA Defendants that the Late Notations were inaccurate or materially misleading and should be modified, removed, or deleted.  *Id.* ¶¶ 149-150.

In February 2023, Wells Fargo received from Experian and Equifax a copy of Morgan's February 2023 LexisNexis Dispute.  *Id*. ¶ 151.  Wells Fargo failed to communicate back to Experian and Equifax that their published information concerning the Wells Fargo Tradeline, that Morgan was late on auto loan payments during June or July of 2016, was inaccurate or materially misleading and should be modified, removed, or deleted.  *Id.* ¶¶ 153-154.

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating a motion to dismiss, the court must accept as true all of the complaint's factual allegations, *id.*, and "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

## III.   DISCUSSION

The CRA Defendants and Wells Fargo move to dismiss the complaint on the ground that Morgan has failed to allege the threshold requirement of an inaccuracy in their reporting.   In particular, they contend that the FCRA claims fail because Morgan has not pled an "objectively and readily verifiable" inaccuracy in his consumer reports.

## A.   Accuracy under the FCRA

"A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate."  *Suluki v. Credit One Bank, NA*, 666 F. Supp. 3d 403, 410 (S.D.N.Y. 2023).  This is true for the specific statutory violations alleged in this case.[8]  *See Artemov v. TransUnion, LLC*, No. 21-cv-1156, 2020 WL 5211068, at *2 (E.D.N.Y. Sept. 1, 2020) ("In considering a challenge under § 1681e(b) or § 1681i, the 'threshold question' is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary.") (citation omitted); *Cabrera v. Experian*, No. 21-CV-8313, 2021 WL 5166980, at *3 (S.D.N.Y. Nov. 5, 2021) ("In actions under Section 1681e or Section1681i, the threshold question is whether the disputed credit information is inaccurate…. A  plaintiff must therefore identify the specific information on [her] credit report that is inaccurate and explain why the identified information is inaccurate.") (citations omitted); *Krausz v. Equifax Information Services, LLC*, No. 21-CV-7427, 2023 WL 1993886, at *11 (S.D.N.Y. Feb. 14, 2023) ("a threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under § 1681s-2(b)"); *Rubin v. HSBC Bank USA, NA*, No. 20-

---

[8] Morgan does not dispute that a threshold showing of inaccuracy is required for his §§ 1681e(b), 1681i and 1681s-2(b) claims.  ECF No. 69 at 13; ECF No. 70 at 13; ECF No. 83 at 8; ECF No. 84 at 16.

CV-4566, 2024 WL 649916, at *2 (E.D.N.Y. Feb. 16, 2024) ("inaccuracy is an essential element of a claim for negligent or willful violation of § 1681s–2(b) of the FCRA") (internal quotation marks omitted); *Sanchez v. JPMorgan Chase Bank, N.A.*, No. 3:22CV1396(SRU), 2023 WL 6049978, at *3-*5 (D. Conn. Sept. 15, 2023) (court dismissed § 1681s-2(b) claim against data furnisher and § 1681i claim against CRAs because plaintiff failed to allege facts challenging the "accuracy" of reported information).

In *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021), the Second Circuit held that a credit report is inaccurate "either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* (internal quotation marks and citation omitted).

The Second Circuit further addressed the meaning of inaccuracy under the FCRA in *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264 (2d Cir. 2023). In *Mader*, the plaintiff alleged that his credit report was inaccurate because it listed his outstanding student loans following his chapter 7 bankruptcy and that, as a result, Experian had violated section 1681e(b). *Id.* at 267 On summary judgment, the district court "assumed that the kind of inaccuracy alleged by Mader was cognizable under the FCRA and proceeded to engage with the question of whether the [particular student loan he had] was non-dischargeable under section 523(a)(8)(A)(i) of the Bankruptcy Code." *Id.* at 268.

On appeal, the Second Circuit determined that this was error because the inaccuracy alleged by Mader was not cognizable under the FCRA. In defining the term "accuracy" in the FCRA, the Court looked to dictionary definitions from around 1970, when the FCRA was enacted. The Court settled on a definition of accuracy as "'freedom from mistake or error' or 'conformity to truth or to some standard or model.'" *Id.* at 269 (quoting Webster's Third New

Dictionary 13-14 (1971)).   The Court concluded that this definition "requires a focus on objectively and readily verifiable information." *Id.*  The Court concluded that the "inaccuracy" Mader alleged did not meet this statutory test because it "evades objective verification." *Id.*  The Court observed that there was no bankruptcy order explicitly discharging the debt and both Mader and the loan lender "continued to treat the debt as outstanding following Mader's bankruptcy." *Id.*  The Court stated that

> the accuracy of Experian's reporting that the debt was still owed depends on whether it is "dischargeable," which itself depends on whether section 523(a)(8)(A)(i) applies to Excel Grad loans. And that question, finally, turns on the unsettled meaning of the word "program" within section 523(a)(8)(A)(i) of the Bankruptcy Code. Courts have taken different approaches as to the appropriate level of specificity required when identifying a qualifying "program" and have reached different conclusions as to the applicability of the section 523(a)(8)(A)(i) exception to Navient's private educational loans…. Here too, ascertaining whether Mader's debt was discharged would require resolving the factual dispute over the funding and structure of the Grad Excel program. As we concluded above, the [evidence proffered by the parties] create a triable question of fact as to this dispute. The bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt means that its status is not sufficiently objectively verifiable to render Mader's credit report "inaccurate" under the FCRA.

*Id.* at 269-70.

In *Sessa v. Trans Union, LLC,* 74 F.4th 38 (2d Cir. 2023), the Second Circuit again took up the term of accuracy under the FCRA.  In that case, the plaintiff leased a vehicle from a dealership for a thirty-six-month term beginning November 2018.  *Id.* at 40.  Although the lease gave Sessa "the option to purchase" the vehicle at the end of the lease term for the residual value of $19,444.07, the information the credit union furnished to Trans Union reported that Sessa owed a balloon payment in the amount of $19,444.00, due on January 1, 2022.  *Id.*  Trans Union then reported the balloon payment obligation, as furnished by the credit union, as a debt on Sessa's credit report from December 2018 through at least 2019.  *Id.*  Trans Union also reported

that the "High Balance" of Sessa's debt related to the vehicle was $25,928.60, an amount which treated the residual value of the vehicle as a debt. *Id.* The lease's plain language did not require Sessa to make a balloon payment. *Id.* Sessa's complaint alleged that Trans Union violated section 1681e(b) by including the balloon payment as a debt on her credit report and by "inaccurate[ly] reporting" the lease information. *Id.*

The district court granted summary judgment, concluding that CRAs cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt the agency reported. *Id.* at 42. On appeal, the Second Circuit reversed and remanded. The Court held the district court's threshold inquiry as to whether a claimed error is factual or legal in nature was error. *Id.* at 43. The Court stated:

> The question of whether a debt is objectively and readily verifiable will <u>sometimes</u>, as it did in *Mader*, involve an inquiry into whether the debt is the subject of a legal dispute….But that does not mean that <u>any</u> dispute that might arguably turn on a question of law is non-cognizable under the FCRA. As the *Mader* Court explained, CRAs may be required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts.

*Id.* (internal quotation marks and citations omitted). The Court reiterated that "there is no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." *Id.* Rather, "the allegedly inaccurate information … must be objectively and readily verifiable to be actionable" under the FCRA. *Id.*

**B.      Morgan's Allegations of Inaccuracy**

The Defendants argue that Morgan's allegations about the inaccuracy of the entries indicating that he was late on the June and July payments fail to demonstrate that the disputed information was "objectively and readily verifiable."

*Revocation*

Morgan characterizes his dispute as presenting "an obviously simple question that was eminently resolvable" – was he responsible for the June and July payments? – which was, he maintains, answerable by reviewing his dispute letter and enclosures.[9]  ECF No. 69 at 15.  He alleges that the Late Notations are inaccurate because he revoked the purchase of the Nissan and related loan debt on June 1, 2016.  ECF No. 42 ¶ 98.  He further alleges that the revocation operated retroactively to completely rescind the purchase of the unmerchantable vehicle from the time of the purchase.  *Id.* ¶ 99.

The Defendants argue that determining whether Morgan properly revoked his purchase under Conn. Gen. Stat. § 42a-2-608 - even with the documents he submitted, the Settlement Agreement with New England Auto and Wells Fargo's letter - is not "objectively and readily verifiable."  I agree.  The documents Morgan provided fail to demonstrate that his alleged revocation of June 1, 2016 was effective under the statute.  The Settlement Agreement, which contains no facts, does not show revocation: by its terms, it is a voluntary, private, negotiated disposition.  See ECF No. 46-1 at 4.  Its text does not suggest that Morgan's revocation was effective or that the purchase agreement was rescinded.  It contains no admissions, and, contrary to the suggestion in Morgan's cover letter, it includes no legal ruling or disposition by a court.  It is silent as to revocation and the treatment of earlier payments.  And although the agreement provides that New England Auto "shall pay to Morgan" the amount of $2500, there is no indication what that payment is for.  It does not say that these funds represent the return of his prior loan payments. as would be appropriate in a case of recission.  *See Tibbetts v. Riverside Motorcars, LLC*, No. CV064006894S, 2008 WL 2967084, at *3 (Conn. Super. Ct. July 14, 2008)

---

[9] It is undisputed that Morgan did not make payments in June or July.  ECF No. 42 ¶¶ 59, 104.  He argues that he was not responsible for those payments.

("When a buyer justifiably revokes acceptance, he may cancel and recover so much of the purchase price as has been paid.")(internal quotation marks omitted).

The Wells Fargo letter offers even less support to Morgan's revocation claim. The letter does not mention the Settlement Agreement or Morgan's attempted revocation. It merely states that the loan was paid off as of July 22, 2016, and that the certificate of title would be sent to New England Auto. Both documents are silent as to the issue of the disputed June and July payments. Under these circumstances, determining whether Morgan's attempted June 1, 2016 revocation was effective and retrospectively annulled his liability for the June and July payments is "not a straightforward application of law to fact," *Mader*, 56 F4th at 440, and therefore is not objectively and readily verifiable.

*Transfer*

Morgan next alleges that the Late Notations are inaccurate because "any debt owed regarding the subject vehicle had been transferred to New England Auto." ECF No. 42 ¶ 100. According to Morgan, the balance of the Wells Fargo auto loan was transferred to New England Auto as of July 8, 2016, "by means of a written and binding agreement which rendered Plaintiff no longer financially responsible for any of the remaining auto loan balance and payments." *Id.* ¶ 105. He points to the Settlement Agreement, which provides that "[i]n consideration for the Agreement, New England Auto World shall pay to Wells Fargo the balance claimed by it under the Contract within seven (7) calendar days of the date of this Agreement." ECF No. 46-1 at 4. In essence, Morgan maintains that this Agreement effectively assigns the debt to New England Auto as of July 8, 2016, and that as a result, he was not responsible for any of the remaining auto loan balance and payments, ECF No. 42 ¶¶ 105-106; ECF No. 69 at 25; ECF No. 83 at 13, which, he says, means that he "was never 30 days late" for the monthly payments due on June 9,

2016 and July 9, 2016.  ECF No. 42 ¶¶ 105, 106.  *See* ECF No. 84 at 21 (arguing that it was "obvious" from the agreement with New England Auto that Morgan "was plainly not responsible for paying the June and July payments"); ECF No. 69 at 25 ("Because the auto loan was fully assumed by New England Auto as of July 8, 2016, it is factually impossible for Plaintiff to be delinquent by 30 days for a payment that was due on June 9, 2016.")  This claimed inaccuracy is not "objectively and readily verifiable" either.

As a preliminary matter, as the Defendants note, there are discrepancies surrounding the effective date of the Agreement (i.e., the signature date of July 22 and the stated effective date of July 8).  Further, there is nothing in the materials submitted by the parties with the complaint and the briefs showing that New England Auto signed the agreement.  Even when these issues are set aside, whether this agreement constitutes an effective assignment by Morgan of his obligation to pay the loan is not objectively and readily verifiable.  "An assignment is a transfer of property or some other right from one person (the assignor) to another (the assignee), which confers a complete and present right in the subject matter to the assignee." *American First Federal, Inc. v. Gordon*, 173 Conn. App. 573, 582 (2017) (internal quotation marks omitted).  Although Morgan characterizes the Agreement as a "transfer" of the loan balance from him to New England, the Agreement does not clearly reflect such an intent.  By its terms, the Agreement, which is between Morgan and New England Auto only, merely requires the latter to pay "to Wells Fargo the balance claimed by it under the Contract within seven (7) days of the date of this Agreement."  ECF No. 42 ¶ 105.  Wells Fargo is not a party to the Agreement and it is unclear how it affects Morgan's obligations to Wells Fargo under the retail auto installment contract.  More specifically, it is unclear whether, as Morgan suggests, the settlement agreement extinguished his obligations under the retail auto installment contract, or whether, instead, it just

created a second obligor, New England Auto, one whose obligation to pay Wells Fargo Morgan (and not Wells Fargo) could enforce by means of an action for damages in the event of breach. *See* ECF No. 46 at 16 n. 6.; ECF No. 40 at 15 n. 3 (defendants observing that the Settlement Agreement on its face does not alter Plaintiff's contractual obligation to Wells Fargo). It is also unclear if Morgan had the right or power under the loan agreement to assign his obligations to another.[10] *See Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 268, 273-74, 277 (2000) ("The parties to a contract can include express language to limit assignment and courts generally uphold these contractual antiassignment clauses"; and noting that although antiassignment clauses are generally construed to limit only the right to assign, the parties may include explicit language "limit[ing] the power to assign or …void[ing] the assignment itself"). Under these circumstances, whether the Agreement terminated Morgan's responsibility for the June and July payments and, if so, when any such termination became effective, is not objectively and readily verifiable.

*July 22 Payment*

Morgan alleges that he was "never 30 days late for the monthly payment that was due on July 9, 2016" because the Wells Fargo auto loan "was paid in full or was satisfied on 07/22/2016."[11] ECF No. 42 ¶ 107. As set forth, he enclosed with his November dispute letter a copy of the Wells Fargo letter acknowledging that the loan was fully paid as of July 22. This dispute is objectively and readily verifiable. Taking the facts as true and construing inferences in

---

[10] The retail installment contract is not part of the record before the Court.

[11] Equifax argues that Morgan did not alert the CRAs to his argument "premised on counting the days" between missed payments and the payoff on July 22, 2016, and that therefore the Court should not consider it here. ECF No. 72 at 5. I do not agree. The dispute letter indicated that the loan was paid off as of July 22. Morgan's submission indicated that he was contesting the entries stating the June and July payments were late, in part because of the July 22 payoff. And although Morgan did not set forth the date his payments were due, such information was ascertainable.

his favor, insofar as Morgan alleges that the CRAs reported that he was 30 days (or more) late as to the July payment, he has alleged a cognizable inaccuracy.

I next turn to the specific allegations concerning the information reported by each defendant to determine whether each allegation describes the only type of inaccuracy I have found cognizable under the FCRA.

## C.    Allegations as to Equifax

The complaint alleges that Equifax's August 2, 2022 report stated as to the Wells Fargo Tradeline an "Account Status" of "NOT_MORE_THAN_THREE_PAYMENT_PAST_DUE." ECF No. 42 ¶ 96.  The complaint further alleges Equifax supplied LexisNexis a report indicating a late payment of "30-60" days during the month of June 2016, *id.* ¶¶ 120-21, and a late payment of 60-days in the "TIMES LATE" field (together, the "LexisNexis Late Notation").  *Id.*  Finally, according to Morgan's November dispute letter, Equifax reported Morgan's June and July 2016 payments as "late."  ECF No. 46-1 at 2.

For the reasons stated above, the June and July payments were late:  the June payment was (at least) 30 days late and the July payment was less than 30 days late.  So Equifax's alleged reporting that Morgan was "late" as to the June and July 2016 payments, ECF No. 46-1 at 2, meaning that payment was made after the due date, is accurate.  Equifax's report of "NOT_MORE_THAN_THREE_PAYMENT_PAST_DUE," ECF No. 42 ¶ 96, also is accurate, as is its report indicating a late payment of "30-60" days during the month of June 2016, *id.* ¶ 120, because the June payment – due June 9 and confirmed as received by Wells Fargo on July 22 – was 43 days late, i.e., between 30 and 60 days late.  The report of a late payment of 60-days in the "TIMES LATE" field, *id.* ¶¶ 120-21, however, is not accurate.  Neither the June nor the July payment was 60 days late.  As noted, the account was paid in full on July 22, 2016, 43 days

after the June 9 due date and 13 days after the July 9 due date.  Because the complaint alleges an objectively and readily verifiable inaccuracy, Equifax's motion to dismiss (ECF No. 46) is denied.

**D.      Allegations as to Trans Union**

The complaint alleges that Trans Union's July 4, 2022 report stated as to the Wells Fargo Tradeline a "Pay Status" of ">Paid, Closed; was 60 days past due date<."  ECF No. 42 ¶ 95. Morgan further alleges that as a result of Trans Union's reporting, his November 11, 2022 LexisNexis consumer file "indicated a late-payment in the previous delinquency field of '30-60' days indicated as occurring during the month of June 2016" and "a late payment of 60-days indicated in the 'TIMES LATE' field (together, the 'LexisNexis Late Notation')." *Id.* ¶¶ 120-21.[12]

For the reasons stated above, the entry in the delinquency field of "30-60" days during "the month of June 2016" is accurate.  But the entry that the Wells Fargo account was "Paid, Closed; was 60 days past due date<", ECF No. 42 ¶ 95, and the entry indicating "a late payment of 60-days" in the "TIMES LATE" field, *id.* ¶¶ 120-121, are inaccurate because neither the June nor the July payment was 60 days late.  Accordingly, Trans Union's motion to dismiss (ECF No. 48) is denied.

**E.      Allegations as to LexisNexis**

The complaint alleges that LexisNexis included the Late Notations in its consumer reports to third parties.  ECF No. 42 ¶ 118.  Specifically, Morgan alleges that LexisNexis's

---

[12] Trans Union raises an additional argument as to why the June and July late entries were accurate.  Specifically, Trans Union contends that as a matter of math, the entries were correct.  According to Trans Union, the June payment was late because "an entire monthly payment cycle had passed" since Morgan's last payment in May.  ECF No. 49 at 18. See ECF No. 73 at 11 ("Plaintiff's last payment was around May 9, 2016" and that "[b]y June 9, 2016, Plaintiff was 30 days late.")  Trans Union further argues that "by July 9, 2016, two entire monthly payment cycles would have passed without payment since May 2016.  Thus, for the July 2016 account history, Plaintiff was 60 days late."  ECF No. 49 at 18.  This argument is without merit.  The relevant date for determining whether a payment is late is the due date.  According to the allegations, the June payment was due June 9, 2016, and so payment was not late until after that date passed.  To determine the number of days late, it is necessary to measure from the due date, not the date of the last payment.

November 11, 2022 consumer disclosure report indicated a late payment of "30-60" days during the month of June 2016.  *Id.* ¶¶ 119-20.  In addition, the LexisNexis consumer file reflected a late payment of 60-days in the "TIMES LATE" field (together, the "LexisNexis Late Notation").  *Id.* ¶ 120.[13]

For the reasons stated above, the entry in the delinquency field of "30-60" days during the month of June 2016 is accurate, and the entry indicating "a late payment of 60-days" in the "TIMES LATE" field, *id.* ¶¶ 120-121, is inaccurate.  Accordingly, LexisNexis's motion to dismiss (ECF No. 48) is denied.

**F.      Allegations as to Wells Fargo**

Morgan alleges that Wells Fargo violated § 1681s-2(b)[14] by failing to investigate the November 2022 and February 2023 dispute letters that Experian, Equifax, Trans Union, and Lexis Nexis forwarded to it. ECF No. 42 ¶¶ 147-155, 181-182.

---

[13] LexisNexis argues that, contrary to the allegations in the complaint, it is not a consumer reporting agency but rather a "reseller" under the FCRA, and as such, is "uninvolved in the assessment of the consumer's dispute." ECF No. 77-1 at 6-7. I do not address this argument, however, because as stated earlier, see footnote 4, I take as true Morgan's allegations that LexisNexis is a consumer reporting agency for purposes of the motions to dismiss.

[14] 15 U.S.C. § 1681s-2(b) provides:
> (b) Duties of furnishers of information upon notice of dispute
> (1) In general
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

In addition to arguing that the complaint should be dismissed because Morgan's alleged "dispute is not objectively and readily verifiable," ECF No. 75-1 at 13, Wells Fargo argues that Morgan's claim is precluded by a release contained in a settlement agreement reached in an earlier lawsuit.  ECF No. 75-1 at 10.  Wells Fargo points to the "Confidential Settlement and General Release Agreement" dated November 29, 2022 that it submitted with its motion to dismiss and argues that the text of the release contained therein bars this action.  *Id.* at 31-34.

Release is an affirmative defense.  Fed. R. Civ. P. 8(c).  A defendant "may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion [only] if the defense appears on the face of the complaint."  *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 446 (S.D.N.Y. 2022); *see also Jones v. Bloomingdale's*, No. 17-CV-1974, 2018 WL 1281819, at *3 (S.D.N.Y. Mar. 8, 2018) ("Affirmative defenses may be considered on a motion to dismiss 'only where the defense appears on the face of the pleading and the documents incorporated therein.'")

The settlement agreement upon which Wells Fargo relies is neither attached to the Amended Complaint nor incorporated by reference in it or integral to it.  There is no suggestion of it  - or the underlying lawsuit  - in the operative complaint.  And it does not appear to be a public document of which judicial notice may be taken.  See ECF No. 75-1 at 31, 32 (the settlement agreement is titled "confidential" and explicitly states that "Customer agrees that the existence of this Agreement, the terms of the Agreement, and the allegations which comprise the Suit shall be forever treated as confidential.")  Accordingly, because Wells Fargo's argument is premised on the settlement agreement, which does not fall within any of the categories of

documents that the Court is permitted to consider on a motion to dismiss, I reject Wells Fargo's arguments based on release at this stage.[15]

As for the issue of inaccuracy, Morgan alleges Equifax, Trans Union, and LexisNexis sent Wells Fargo his disputes for investigation and that Wells Fargo failed to review the information and failed "to communicate back" to each of these defendants "that their published information concerning the Wells Fargo Tradeline" was inaccurate and "should be modified, removed, or deleted."  ECF No. 42 ¶¶ 147-55.  Because Morgan has adequately alleged a cognizable inaccuracy in the reports of these CRAs,[16] Wells Fargo's motion to dismiss (ECF No. 75) is denied.

## IV.     CONCLUSION

For the reasons stated above, the motions to dismiss filed by Equifax (ECF No. 46), Trans Union (ECF No. 48), LexisNexis (ECF No. 77), and Wells Fargo (ECF No. 75) are DENIED.

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.


Dated: Hartford, Connecticut
           March 18, 2024

---

[15] Wells Fargo asserts in a footnote that, even if Morgan's claims are not barred by the release, the Settlement Agreement provides "a method to resolve any outstanding issues that Plaintiff has with the tradeline" – that is, to notify counsel for Wells Fargo.  ECF No. 75-1 at 12 n.8.  It argues that Morgan "has not complied with the terms of the settlement to resolve" the dispute raised in this litigation.  *Id.*  It is unclear if Wells Fargo is suggesting this is a basis for dismissal.  I need not reach this argument because as stated, I may not consider the agreement – and arguments relating to it – in deciding Wells Fargo's motion to dismiss.

[16] In addition, Morgan alleges that Experian's report stated that his Wells Fargo loan was "past due 60 days" and that "the payment history grid indicated '30' and '60' for the months of June and July of 2016, respectively."  ECF No. 42 ¶ 97.  As indicated, neither the June nor July payment was 60 days late.